**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| **ACCELERON, LLC,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | **CASE NO. 6:08CV417** |
| vs. | § | **PATENT CASE** |
| | § | |
| **EGENERA, INC., et. al,** | § | |
| | § | |
| Defendants. | § | |
| | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Hewlett-Packard's ("HP") motion to transfer venue (Docket No. 69), NEC Corporation of America's ("NEC") motion to transfer venue (Docket No. 85), Sun Microsystem's ("Sun") motion to transfer venue (Docket No. 91), Supermicro Computer, Inc.'s motion to transfer venue ("Supermicro") (Docket No. 97), Egenera, Inc.'s ("Egenera") motion to transfer venue (Docket No. 98), and Fujitsu-Siemens Computers, Inc.'s ("Fujitsu, Inc.") and Fujitsu-Siemens Computers, LLC's ("Fujitsu, LLC")[1] motion to dismiss for lack of personal jurisdiction or transfer venue (Docket No. 99). For the reasons stated below, Defendants' motions to transfer venue are **DENIED** and Fujitsu's motion to dismiss is **GRANTED**.

**BACKGROUND**

On October 17, 2007 HP filed a declaratory judgment action against Acceleron in the District of Delaware seeking a judgment that certain products did not infringe U.S. Patent No. 6,948,021 (the

---

[1] The Fujitsu entities will be collectively referred to as "Fujitsu," and all defendants will collectively be referred to as "Defendants."

1

"'021 patent") and that the patent was invalid. On December 21, 2007, Acceleron filed a motion to dismiss that action for lack of subject matter jurisdiction. Then, on October 28, 2008, Acceleron filed this action against Defendants (including HP) claiming that they infringed the '021 patent. HP filed its present motion to transfer venue to the District of Delaware on January 23, 2009 arguing that transfer is mandated by the so-called "first to file" doctrine or under 28 U.S.C. § 1404(a). Shortly thereafter, Defendants Intel, NEC, Sun, Supermicro, and Egenera joined in HP's motion. In addition, Fujitsu filed a motion to dismiss for lack of personal jurisdiction, and alternatively joined the other Defendants' motions to transfer. In the mean time, on March 10, 2009, HP's action in the District of Delaware was dismissed for lack of subject matter jurisdiction. *See Hewlett-Packard Co. v. Acceleron*, 601 F. Supp. 2d 581 (D. Del. 2009).

*The Parties*

Acceleron is a business incorporated under the laws of Delaware with its principal place of business in Tyler, Texas. Its president and sole employee, Thomas B. Ramey III, resides in Tyler. Egenera is incorporated in Delaware and has its principal place of business is in Marlborough, Massachusetts. Intel, Fujitsu, HP, Rackable Systems, Sun, and Supermicro are all organized under Delaware law and have principal places of business in California. Fujitsu America Inc. ("Fujitsu America") is incorporated and has its principal place of business in California. Silicon Mechanics is incorporated and has its principal place of business in Washington. NEC is incorporated in Delaware has its principal place of business in Texas.

**FIRST TO FILE DOCTRINE**

Defendants' motions primarily assert that this case should be transferred pursuant to the "first to file" doctrine. The first to file doctrine allows a district court to refuse to hear a case where issues

"substantially overlap" with issues raised in a case previously filed in another district court. *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999). Further, "[t]he Fifth Circuit adheres to the general rule, that the court in which an action is first filed is the appropriate court to determine whether subsequently filed cases involving substantially similar issues should proceed." *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 948 (5th Cir. 1997). The rule is a byproduct of the Federal Courts' concern "to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid peacemeal resolution of issues that call for a uniform result." *W. Gulf Mar. Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 728-29 (5th Cir. 1985).

Since HP's declaratory judgment action is no longer pending before the Delaware District Court, none of the traditional concerns invoking the "first to file" doctrine are present. Furthermore, there is no longer any first-filed action on which Defendants can base their transfer argument. Accordingly, Defendants' transfer arguments based on the "first to file" doctrine are rejected.

## DISCRETIONARY TRANSFER

*Applicable Law*

Alternatively, Defendants argue that they are entitled to transfer under 28 U.S.C. § 1404(a). Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." As always, a district court has broad discretion in deciding whether to order a transfer. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ("*In re Volkswagen II*"). The first inquiry when analyzing a case's eligibility for 1404(a) transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*In re Volkswagen I*").

Once that threshold inquiry is met, courts analyze both public and private factors relating to the convenience of parties and witnesses as well as the interests of particular venues in hearing the case. *See Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2009). The private factors are: 1) the relative ease of access to sources of proof; 2) the availability of compulsory process to secure the attendance of witnesses; 3) the cost of attendance for willing witnesses; and 4) all other practical problems that make trial of a case easy, expeditious and inexpensive. *In re Volkswagen I*, 371 F.3d at 203; *In re TS Tech*, 551 F.3d at 1319. The public factors are: 1) the administrative difficulties flowing from court congestion; 2) the local interest in having localized interests decided at home; 3) the familiarity of the forum with the law that will govern the case; and 4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *In re Volkswagen I*, 371 F.3d at 203; *In re TS Tech*, 551 F.3d at 1319.

The plaintiff's choice of venue is not a factor in this analysis. *In re Volkswagen II*, 545 F.3d at 314-15. Rather, the plaintiff's choice of venue contributes to the defendant's burden in proving that the transferee venue is "clearly more convenient" than the transferor venue. *Id.* at 315; *In re TS Tech*, 551 F.3d at 1319. Furthermore, though the private and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *In re Volkswagen II*, 545 F.3d at 314-15.

*Jurisdiction*

No Defendant has made an effort to show that this entire case could have been filed in the District of Delaware. Simply showing that a judicial district may have jurisdiction over a particular Defendant is insufficient for Defendants to meet their burden regarding this threshold analysis.

"[T]ransfer under section 1404(a) may properly be made only where the court to which transfer is sought would have been a proper venue and would have had personal jurisdiction over all of the defendants if it had been the original forum." *Frazier v. Commercial Credit Equip. Corp.*, 755 F. Supp. 163, 165 (S.D. Miss. 1991) (citing *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 24 (3rd Cir. 1970)). Though many of the defendants in this case are well known entities with numerous contacts in many states, there has been no showing that every defendant would be amenable to personal jurisdiction in the District of Delaware. Particularly, there is no evidence that Silicon Mechanics, with its state of incorporation and principal place of business in Washington, would have sufficient contacts in Delaware to be subject to personal jurisdiction in the District of Delaware. For this reason alone, transfer should be denied. However, even assuming that Defendants had made this threshold showing, the factors do not favor transfer.

***The Relative Ease of Access to Sources of Proof***

Despite technological advances that certainly lighten the relative inconvenience of transporting large amounts of documents across the country, this factor is still a part of the transfer analysis. *In re Volkswagen II*, 545 F.3d at 316. Therefore, courts have analyzed this factor in light of the fiction that voluminous documents must be transported from their physical location (supposing that electronically stored documents are, in fact, physical) to the trial venue. *See id.* at 316. Thus, almost invariably, this factor will turn upon which party will most probably have the greater volume of documents relevant to the litigation and their presumed physical location in relation to the transferee and transferor venues. *See, e.g.*, *id.* at 314-15; *Jackson v. Intel Corp.*, 2:08-cv-154, 2009 WL 749305 at *2 (E.D. Tex. March 19, 2009) (Ward, J.) (analyizing the volume and location of parties documentary evidence); *Robles v. USA Truck, Inc.*, L-08-122, 2009 WL 677835 at *5 (S.D.

Tex. Mar 12, 2009) (same)**.**

Defendants have overwhelmingly shown that this case will revolve around documents within their possession. However, the majority of Defendants' principal places of business, as well as most of their collective employees, are in California. Therefore, while Defendants have identified some documents that are located closer to Delaware than Texas, they have not convincingly proven that more documents relevant to this case are located away from their central places of business in California, and thus closer to Delaware than Texas. For example, the fact that some documents related to the prosecution of the patent are located in Washington, D.C. (and thus closer to Delaware) does not unilaterally outweigh the fact that the remainder of the relevant documents to this litigation are located closer to Texas at the Defendants' principal places of business.

Thus, Defendants have not shown that the District of Delaware would clearly have easier access to proof than the Eastern District of Texas. Accordingly, this factor weighs against transfer.

***The Availability of Compulsory Process to Secure the Attendance of Witnesses***

This factor will weigh more heavily in favor of transfer when more third party witnesses reside within the transferee venue. *See In re Volkswagen II*, 545 F.3d at 316. The factor will weigh the heaviest in favor of transfer when a transferee venue is said to have "absolute subpoena power." *Id.* "Absolute subpoena power" is simply the concept that all relevant and material third party witnesses reside within the subpoena power of a particular venue. *See id.* at 316; *Miller v. Longview Psychiatric Hosp.,* 2:08-CV-42, 2009 WL 748094 at *3 (E.D. Tex. March 19, 2009) (Ward, J.).

Here, as already stated, relevant witnesses reside all over the country. In fact, not a single relevant witness has been identified that resides in Delaware. Since there is no jurisdiction with "absolute subpeona power" and neither the Eastern District of Texas or the District of Delaware is

in a better position to compel attendance of any third party witnesses, this factor is neutral.

*The Cost of Attendance for Willing Witnesses*

This factor is analyzed giving broad "consideration [to] the parties and witnesses in all claims and controversies properly joined in a proceeding." *In re Volkswagen I*, 371 F.3d at 204. Further, regardless of the actual likelihood of a particular witness testifying at trial, the relative materiality of witnesses' testimony is irrelevant to this inquiry. *See In re Genentech*, ___ F.3d ___, 2009 WL 1425474 at *4 (Fed. Cir. May 22, 2009) ("Requiring a defendant to show that a potential witness has more than relevant and material information at this point in the litigation or risk facing denial of transfer on that basis is unnecessary."). Thus, all potential material and relevant witnesses must be taken into account for the transfer analysis, irrespective of their centrality to the issues raised in a case.

The Fifth Circuit has adopted a "100 mile rule" to assist with analysis of this factor. *See In re Volkswagen I*, 371 F.3d at 204-205. "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Id.* at 205. When applying the "100 mile rule" the threshold question is whether the transferor and transferee venues are more than 100 miles apart. *See In re Volkswagen II*, 545 F.3d at 317; *In re TS Tech*, 551 F.3d at 1320. If so, then a court determines the respective distances between the residences (or workplaces) of all the identified material and relevant witnesses and the transferor and transferee venues. *See In re Volkswagen II*, 545 F.3d at 317; *In re TS Tech*, 551 F.3d at 1320. The "100 mile rule" favors transfer (with differing degrees) if the transferee venue is a shorter average distance away from witnesses than the transferor venue. *See In re Volkswagen II*, 545 F.3d at 317; *In re TS*

*Tech*, 551 F.3d at 1320. Furthermore, the existence or non-existence of direct flights can impact the analysis of travel time. *See In re Volkswagen I*, 371 F.3d at 204, n. 3. Thus, regardless of the "straight line" distances calculated for the "100 mile rule," if "travel time" distances favor the transferee venue, then this factor will favor transfer.

Here, since the District of Delaware and the Eastern District of Texas are clearly more than 100 miles apart, the "100 mile rule" applies. After calculating the relative distances that identified witnesess may have to travel to attend trial in the respective venues, it is clear that the Eastern District of Texas is more convenient for a majority of the witnesses. Acceleron's sole employee lives and works in Tyler, Texas. NEC has its principal place of business in Texas. Although Egenera's principal place of business is closer to the District of Delaware, the remainder of the defendants have principal places of business that are closer to the Eastern District of Texas than the District of Delaware. Additionally, Defendants have identified several witnesses residing closer to Delaware than Texas including a potential witness located in Burlington, Massachussetts and four attorneys who prosecuted the '021 patent living in the Washington, D.C. area. However, there are also a number of particularly identifiable witnesses who reside closer to Texas than Delaware including two inventors of the '021 patent living in Atlanta, Georgia and a fifth prosecuting attorney residing in San Diego, California.

Furthermore, it is uncontested that direct flights from San Jose, California to Dallas, Texas (about a two hour drive to the Tyler federal courthouse) are half as long as flights requiring a layover from San Jose to Philadelphia (the closest airport to Wilmington, Delaware[2]).

---

[2] Wilmington, Delaware is the location of the J. Caleb Boggs Federal Building where the Judges of the District of Delaware sit.

However, the "100 mile rule" should not be rigidly applied. *See In re Genentech*, ___ F.3d ___, 2009 WL 1425474 at *4. When a particular witness will be required to travel "a significant distance no matter where they testify," then that witness is discounted for purposes of "100 mile rule" analysis. *Id.* at *4, *6 (discounting European witnesses and documents transported from Washington D.C. in the convenience analysis when reviewing a denial of transfer from Texas to California). This factor will also favor transfer when a "substantial number of material witnesses reside in the transferee venue" and no witnesses reside in the transferor venue regardless of whether the transferor venue would be more convenient for all of the witnesses. *Id.* at *5.

Here, no identified witnesses reside in Delaware and no defendant has its principal operations in Delaware. On the other hand, one defendant (NEC) and one identified witness are located in Texas. Since no "substantial number" of witnesses are located in the transferee venue, this is a case where Texas's central location makes it a more convenient venue for all the witnesses in the case than the District of Delaware. Therefore, this factor weighs against transfer.

***Other Practical Problems***

Practical problems include those that are rationally based on judicial economy. *In re Volkswagen of Am., Inc.*, 2009 WL 1425475 at *3 (Fed. Cir. May 22, 2009) ("*In re Volkswagen III*"). Particularly, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer. *Id.* at *2. Since HP's declaratory judgment action has been dismissed, there are no longer any concerns of duplicative litigation. This factor is neutral.

***The Administrative Difficulties Flowing from Court Congestion***

The speed with which a case can come to trial and be resolved is a factor in the transfer

9

analysis. *In re Genentech*, ___ F.3d ___, 2009 WL 1425474 at *8. This is particularly true here. The median time to trial in the District of Delaware is 37.5 months. The median time to trial in the Eastern District of Texas is only 18 months. Judicial economy is far better served by this case remaining in the Eastern District of Texas where its disposition will most probably come nearly a year and a half faster than in the District of Delaware. Accordingly, this factor weighs strongly against transfer.

### *The Local Interest in Having Localized Interests Decided at Home*

The Fifth Circuit has explained that "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *In re Volkswagen I*, 371 F.3d at 206. Thus, this factor analyzes the "factual connection" that a case has with both the transferee and transferor venues. *See id*. Generally, local interests that "could apply virtually to any judicial district or division in the United States" are disregarded in favor of particularized local interests. *In re Volkswagen II*, 545 F.3d at 318 (disregarding local interest of citizens, in a products liability suit, who used the widely-sold product within the transferor venue); *In re TS Tech*, 551 F.3d at 1321.

Acceleron has its principal operations and only employee in Tyler, Texas. Thus, the Eastern District of Texas has a particularized interest in the trial of the case as a whole. This interest is only bolstered by NEC's principal office's location within Texas. The only particular interest that Defendants identify in Delaware is the fact that the majority of the parties claim Delaware as their state of organization. Importantly, Defendants do not claim that any of the parties have substantial pecuniary interests in Delaware or that any substantial business operations occur in Delaware. Thus, though the Court recognizes a minor particularized interest that Delaware has in this litigation (by

way of the organization fees and corporate taxes that are paid to that state), that interest is outweighed by the direct and particular interest that this venue has in the Plaintiff's day-to-day operations. Thus, this factor also weighs against transfer.

### *The Familiarity of the Forum with the Law that Will Govern the Case*

The parties do not assert that either the District of Delaware or the Eastern District of Texas has any particular advantage with regard to familiarity with the law governing this litigation. As a result, this factor is neutral.

### *Avoidance of Unnecessary Problems of Conflict of Laws*

Likewise, the parties have not identified any issues regarding conflicts of laws in this litigation. Thus, this factor is neutral.

### *Conclusion*

After a review of the 1404(a) transfer factors, it is clear that Defendants have failed to meet their burden of showing that this action could have been brought in the District of Delaware and have further failed to show that the District of Delaware would be a clearly more convenient venue than the Eastern District of Texas for the prosecution of this action. Accordingly, Defendants' motions to transfer are denied.

## FUJITSU'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

### *Applicable Law*

Fujitsu moves to dismiss for lack of personal jurisdiction.[3] In a patent case, personal

---

[3] Fujitsu's procedural posture in raising this motion is highly irregular. In a brief paragraph before their answer (filed January 23, 2009), Fujitsu denies that this Court has personal jurisdiction without any further explanation or briefing. *See* Fujitsu's Conditional Answer, Docket No. 61. Then Fujitsu filed, along with its motion to transfer venue, a full brief contesting personal jurisdiction (filed February 24, 2009). *See* Fujitsu's Motion to Dismiss, Docket No. 99. Because Acceleron has not contested Fujitsu's motion on procedural grounds, the Court

11

jurisdiction intimately relates to patent law, and Federal Circuit law governs the issue. *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1201 (Fed. Cir. 2003). If the parties have not conducted jurisdictional discovery, a plaintiff only needs to make a prima facie showing that the defendant is subject to personal jurisdiction, and the pleadings and affidavits are to be construed in the light most favorable to the plaintiff. *Id.* A court can exercise personal jurisdiction over an out-of-state defendant if the forum state's long-arm statute permits jurisdiction without violating federal due process as delineated in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945); *LSI Industries Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1371 (Fed. Cir. 2000); and *3D Systems, Inc. v. Aarotech Laboratories, Inc.*, 160 F.3d 1373, 1376-77 (Fed. Cir. 1998). Although federal courts hearing patent cases defer to the forum state's interpretation of its long-arm statute, Federal Circuit law controls whether the exercise of personal jurisdiction comports with federal due process. *3D Sys.*, 160 F.3d at 1377.

"The Texas long-arm statute reaches 'as far as the federal constitutional requirements of due process will allow.'" *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002) (quoting *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex. 1991)). Thus, the analysis of Texas's long-arm statute collapses into the federal due-process inquiry. Due process requires an out-of-state defendant have minimum contacts with the forum such that maintaining the suit does not offend traditional notions of fair play and substantial justice. *Int'l Shoe*, 326 U.S. at 316.

Rule 12(b)(2) allows a court to dismiss a case where the court does not have personal

---

will address the motion on its merits. However, the Court finds this procedure highly suspect in light of Local Rule CV-7(c) regarding "briefing supporting motions" in conjunction with well known due-order-of-pleading principals.

jurisdiction over the defendant. FED. R. CIV. P. 12(b)(2). Once a movant challenges a court's jurisdiction over him, the party asserting jurisdiction bears the burden to show the movant has minimum contacts with the forum state to support jurisdiction over the movant. *Pieczenik v. Dyax Corp.*, 265 F.3d 1329, 1334 (Fed. Cir. 2001). If the party asserting jurisdiction makes such a showing, the movant bears the burden to prove the exercise of jurisdiction would be constitutionally unreasonable. *Akro Corp. v. Luker*, 45 F.3d 1541, 1546 (Fed. Cir. 1995).

The minimum contacts requirement may be met by a plaintiff showing either "general" or "specific" jurisdiction over a defendant. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). "Specific" jurisdiction exists when a defendant has contacts in the forum state and the controversy in a case "arises out of" or "relates" to those contacts. *Id.* Even when the controversy is unrelated to a defendant's contacts, "general" jurisdiction exists when the defendant's contacts with the forum state are "continuous and systematic." *Id.* at 414-16.

*Application*

The following facts are uncontested. As mentioned previously, Fujitsu, Inc. is a Delaware Corporation with its principal place of business in Sunnyvale, California. Fujitsu, LLC is a company that is no longer in existence. Fujitsu, LLC was organized in Delaware on March 29, 2000 and served as a holding company for assets ultimately transferred to Fujitsu, Inc. Fujitsu, LLC ceased to exist when it merged with Fujitsu, Inc. on March 31, 2002. Fujitsu, Inc. has no business relationships in Texas and has never appointed an agent for service of process in Texas. Additionally, Fujitsu, Inc. has never made, used, imported, sold, or offered to sell any of the accused products in Texas.

Acceleron's only response regarding these facts is that information on the "Fujitsu Group"

website is confusing and contradictory. Acceleron submits no evidence that Fujitsu, Inc. has a single contact within Texas or that Fujitsu, LLC still exists contrary to Fujitsu's affidavit evidence. Furthermore, Acceleron alleges that an entity generally known as "Fujitsu-Siemens Computers" has a business relationship with Southwest Airlines headquartered in Dallas, Texas and that another company, "Fujitsu-Siemens Computer Systems Corp.," has sold an accused product within this district. Importantly, Acceleron's unsupported and directly contradicted allegations that Fujitsu, Inc. has an ongoing business relationship with a company based in Texas, does not support a prima facie case for either general or specific jurisdiction.

Furthermore, the "Fujitsu Group's" allegedly confusing website does not relieve Acceleron of its jurisdictional burden or show that it has used any diligence in identifying the "Fujitsu" entity that allegedly sold an accused product in Texas. Because Acceleron has presented no evidence tending to show that this Court has personal jurisdiction over either Fujitsu, Inc. or Fujitsu, LLC, Fujitsu's motion to dismiss for lack of personal jurisdiction is granted. As a result, Fujitsu, Inc. and Fujitsu, LLC are dismissed without prejudice. In addition to its response, Acceleron requests jurisdictional discovery and additional time to amend its complaint. With regard to those requests, Acceleron has not shown any diligence (besides browsing a website) in uncovering the manufacturer of an accused product that is readily identifiable. For this reason, its request for jurisdictional discovery is denied. However, in the interest of fairness, Acceleron is granted leave to amend its complaint and join and serve the correct "Fujitsu" entity by thirty days from the date of this order.

## CONCLUSION

For the aforementioned reasons Defendants' motions to transfer are **DENIED** and Fujitsu's motion to dismiss is **GRANTED**. Furthermore, Acceleron is granted leave to file an amended

complaint adding the correct Fujitsu parties by thirty days from the date of this order.  The additional parties shall be served by that time as well.

      **So ORDERED and SIGNED this 9th day of June, 2009.**

_____
**LEONARD DAVIS
UNITED STATES DISTRICT JUDGE**